ECF

ORIGINAL

FILED
SEP 5 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GANTT W. MILLER and
KORLISS K. MILLER,

*Plaintiffs,*

v. NO. 06-616 C

THE UNITED STATES,

*Defendant.*

COMPLAINT

Plaintiffs, Gantt and Korliss Miller, by and through their attorneys, Arnold, Cesare & Bailey, PLLC, bring the following action against Defendant, the United States of America, acting through the Department of Agriculture, Farmers Home Administration and/or Rural Development Departments, and state as follows:

Parties

1. Gantt and Korliss Miller ("Plaintiffs") are residents of Missouri, maintain their primary office address at 12570 Hibler Woods, St. Louis, MO 63141, and are owners in fee simple of the following rental housing properties:

A. Washington Village II, located in Charles Town, West Virginia, and consisting of approximately thirty (30) units;

B. Berkeley Square, located in Berkeley Springs, West Virginia, and consisting of approximately twenty-four (24) units;

C. Village Square, located in Paw Paw, West Virginia, and consisting of approximately twenty-four (24) units;

D. Washington Square I, located in Berryville, Virginia, and consisting of approximately forty (40) units;

E. Washington Square II, located in Berryville, Virginia, and consisting of approximately six (6) units.

2. The United States of America, at all relevant times herein, was acting through the Department of Agriculture, Farmers Home Administration and/or Rural Development Departments (hereinafter "Defendant" or "USDA"), at its office in Elkins, West Virginia or Harrisonburg, Virginia.

## Jurisdiction

3. This Court's jurisdiction is proper pursuant to 28 U.S.C. §1491(a)(1).

## Factual Allegations

4. On or about June 21, 1979, Amy Associates, a partnership, entered into a Loan Agreement with the Defendant pursuant to Section 515 of the Housing Act of 1949. Plaintiff Gantt Miller is the authorized representative for Amy Associates.

5. Under the terms of this Loan Agreement, Amy Associates agreed to finance rural rental housing and related facilities for senior citizens and other persons and families with low- or moderate-incomes.

6. Washington Village Apartments II, located in Charles Town, West Virginia, was financed with this loan and is subject to the restrictions set forth in the Loan Agreement.

7. Pursuant to the loan documents, the principal amount of $637,000.00 was to be paid over a period of fifty (50) years, at an interest rate of Eight and One-Half Percent (8.5%), with principal and interest payments to begin in July, 1981. *See* Promissory Note, Real Estate Deed of Trust, and Loan Agreement at Exhibits 1, 2 and 3 respectively.

8. At a later date, all partnership interests were transferred to Plaintiff Gantt Miller, who in turn transferred an interest in the Washington Village II project to his wife, Plaintiff Korliss Miller.

9. On or about June 5, 1980, Plaintiffs entered into two (2) Loan Agreements with the Defendant pursuant to Section 515 of the Housing Act of 1949.

10. Under the terms of these Loan Agreements, Plaintiffs agreed to finance rural rental housing and related facilities for senior citizens and other persons and families with low- or moderate-incomes.

11. Berkeley Square, located in Berkeley Springs, West Virginia, was financed with these loans and is subject to the restrictions set forth in the Loan Agreements.

12. Pursuant to the loan documents regarding the first loan, the principal amount of $523,200.00 was to be paid over a period of fifty (50) years, at an interest rate of Eight and One-Half Percent (8.5%), with principal and interest payments to begin in July, 1981. *See* Promissory Note, Real Estate Deed of Trust, Modified Real Estate Deed of Trust, and Loan Agreement at Exhibits 4, 5, 6, and 7 respectively.

13. Pursuant to the loan documents regarding the second loan, the principal amount of $115,600.00 was to be paid over a period of fifty (50) years, at an interest rate of Eleven Percent (11%), with principal and interest payments to begin in July, 1981. *See* Promissory Note, Real Estate Deed of Trust, Modified Real Estate Deed of Trust and Loan Agreement at Exhibits 8, 5, 6 and 7 respectively.

14. On or about August 19, 1980, Plaintiffs Gantt and Korliss Miller entered into two (2) Loan Agreements with the Defendant pursuant to Section 515 of the Housing Act of 1949.

15. Under the terms of these Loan Agreements, Plaintiff agreed to finance rural rental housing and related facilities for senior citizens and other persons and families with low- or moderate-incomes.

16. Village Square, located in Paw Paw, West Virginia, was financed with these loans and is subject to the restrictions set forth in the Loan Agreements.

17. Pursuant to the loan documents regarding the first loan, the principal amount of $525,000.00 was to be paid over a period of fifty (50) years, at an interest rate of Nine Percent (9%), with principal and interest payments to begin in September, 1981. *See* Promissory Note, Real Estate Deed of Trust, Modified Real Estate Deed of Trust and Loan Agreement at Exhibits 9, 10, 11 and 12 respectively.

18. Pursuant to the loan documents regarding the second loan, the principal amount of $134,600.00 was to be paid over a period of fifty (50) years, at an interest rate of Ten and Three-Quarters Percent (10.75%), with principal and interest payments to begin in September, 1981. *See* Promissory Note, Real Estate Deed of Trust, Modified Real Estate Deed of Trust and Loan Agreement at Exhibits 13, 10, 11 and 12 respectively.

19. On or about January 29, 1976, Plaintiffs entered into a Loan Agreement with the Defendant pursuant to Section 515 of the Housing Act of 1949.

20. Under the terms of this Loan Agreement, Plaintiff agreed to finance rural rental housing and related facilities for senior citizens and other persons and families with low- or moderate-incomes.

21. Washington Square I, located in Berryville, Virginia, was financed with this loan and is subject to the restrictions set forth in the Loan Agreement.

22. Pursuant to the loan documents, the principal amount of $606,500.00 was to be paid over a period of forty (40) years, at an interest rate of Eight and One-Eighth Percent (8.125%), with principal and interest payments to begin in January, 1977. *See* Promissory Note, Real Estate Deed of Trust, and Loan Agreement at Exhibits 14, 15 and 16 respectively.

23. On or about April 27, 1979, Plaintiffs entered into a Loan Agreement with the Defendant pursuant to Section 515 of the Housing Act of 1949.

24. Under the terms of this Loan Agreement, Plaintiff agreed to finance rural rental housing and related facilities for senior citizens and other persons and families with low- or moderate-incomes.

25. Washington Square II, located in Berryville, Virginia, was financed with this loan and is subject to the restrictions set forth in the Loan Agreement.

26. Pursuant to the loan documents, the principal amount of $119,500.00 was to be paid over a period of fifty (50) years, at an interest rate of Nine Percent (9%), with principal and interest payments to begin in April, 1980. *See* Promissory Note, Real Estate Deed of Trust, and Loan Agreement at Exhibits 17, 18 and 19 respectively.

27. The loan documents regarding all projects indicated that Plaintiffs were unable to obtain a comparable loan elsewhere in the commercial market, and further guaranteed an absolute right to prepay the loan at any time and thereby gain release from the federal program and its related restrictions. Indeed, these incentives induced Plaintiffs to execute the loan documents with the Defendant.

28. Subsequent to the execution of the Loan Agreements, the United States Congress

determined that an increasing number of Section 515 participants were prepaying their mortgages which thereby threatened the continued availability of rural low- and moderate-income housing. As such, the Housing and Community Development Amendments of 1979 prohibited the USDA from accepting prepayment of any loan made before or after the date of enactment, unless the owner agreed to maintain the housing requirements for either a fifteen (15) or twenty (20) year period.

29. In 1987, subsequent to the execution of the Loan Agreements, and in an effort to permanently thwart prepayment attempts, the United States Congress passed the Emergency Low Income Housing Preservation Act (ELIHPA), as amended and set forth in 42 U.S.C. § 1472(c), which placed permanent restraints upon the prepayment of Section 515 loans. ELIHPA directly conflicted with the bargained for provisions of the loan agreement between Plaintiffs and Defendant.

30. Plaintiffs have the ability and intention to prepay all outstanding loan amounts for all projects identified herein.

31. On or about March 8, 2002, Plaintiff Gantt Miller formally requested the right to prepay the entire outstanding amount on the loans applicable to Washington Village Apartments I, another housing project owned by Plaintiffs.

32. The USDA refused to accept the tendered prepayment and has dishonored its obligation to release control over use of the property that secured the loan.[1]

---

[1] Plaintiffs have pending in the United States Court of Federal Claims Civil Action No. 06-397C, relating to Washington Village Apartments I located in Charles Town, West Virginia and alleging similar allegations as set forth herein. Based upon the actions of the Defendant regarding Washington Village Apartments I, Plaintiffs assert that the Defendant will refuse to accept unqualified prepayment for the other housing projects and therefore have not participated in the lengthy and costly prepayment request process.

## COUNT ONE

**(Breach of Contract)**

33. Plaintiffs incorporate Paragraphs 1 through 32 by reference as if fully set forth herein.

34. Defendant's subsequent legislation constituted an anticipatory repudiation of the contracts between the parties. Plaintiffs contend that this repudiation will result in a breach of the agreements, based upon the actions of the Defendant regarding Washington Village Apartments I and the Defendant's general position to not accept unqualified prepayment for these types of housing projects.

35. As both the direct and proximate result of Defendant's repudiation and breach, Plaintiffs have been damaged and will continue to suffer foreseeable and consequential damages in an amount to be proven at trial.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendant as follows:

A. That the Court award Plaintiffs monetary relief for the damages suffered to date and the damages Plaintiff will continue to suffer as a result of the Defendant's breach of the contracts between the parties, in an amount to be proven at trial;

B. That the Court award Plaintiffs their attorney fees and expenses pursuant to applicable law;

C. That the Court award Plaintiffs their costs and interest pursuant to applicable law;

D. That the Court grant such other and further relief as the law and the evidence may justify, and as the Court finds necessary and just.

**GANTT and KORLISS MILLER**
**By Counsel**

Christopher P. Stroech, Esq. (WVSB #9387)
Gregory A. Bailey, Esq. (WVSB #7957)
Arnold, Cesare & Bailey, PLLC
P.O. Box 69, 117 E .German Street
Shepherdstown, WV 25443
304.876.1575
304.876.9186
cstroech@acbattorneys.com
gbailey@acbattorneys.com